# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BRADLEY J. SOBOLIK, *trustee for the next of kin of Wendy J. Sobolik, deceased*, | Civil No. 09-1785 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC, and SIMPLICITY MANUFACTURING, INC., | |
| Defendants. | |

John D. Gehlhausen and Elisabeth A. Cortese, **JOHN GEHLHAUSEN, P.C.**, 22488 East Polk Drive, Aurora, CO, 80016; Jeffrey Hane, **BRINK, SOBOLIK, SEVERSON, MALM & ALBRECHT, PA**, Post Office Box 790, Hallock, MN 56728, for plaintiff.

James L. Haigh and David A. Wikoff, **COUSINEAU MCGUIRE CHARTERED**, 1550 Utica Avenue South, Suite 600, Minneapolis, MN, 55416; Donald H. Carlson and James A. Niquet, **CRIVELLO CARLSON, S.C.**, 710 North Plankinton Avenue, Milwaukee, WI 53203, for defendants.

This wrongful death action arises out of the death of Wendy J. Sobolik ("Ms. Sobolik") who drowned after the lawn tractor she was using rolled over into a coulee and pinned her under the water. Bradley Sobolik ("Sobolik"), as next of kin, brought a wrongful death suit against Briggs & Stratton Power Products Group, LLC and Simplicity Manufacturing, Inc. (collectively, "defendants") alleging design defect and failure to warn claims in both strict liability and negligence. Defendants move for

summary judgment on all claims.  Because the Court finds that the reasonability of the design and the adequacy of the warnings cannot be conclusively determined based on the current record, summary judgment is denied.  Further, since defendants have not met their burden of proof on assumption of risk, summary judgment for those defenses is denied.

## BACKGROUND

On June 16, 2007, Ms. Sobolik was mowing her lawn with a Javelin model zero-turning radius ("ZTR") lawn tractor manufactured by defendants.  The mower weighed approximately 623 pounds.  (Aff. of Thomas Berry, Aug. 30, 2010, Ex. 2 at 11, Docket No. 156.)  Ms. Sobolik apparently drove near the edge of a coulee and the tractor slipped into the water, rolled, and pinned her beneath its weight.  (Compl. ¶ 8, Docket No. 1.)  The accident was not witnessed so the record contains no evidence as to how close to the coulee Ms. Sobolik was mowing or how the tractor ended up in the water.  Ms. Sobolik drowned as a result.  Sobolik argues that the lawn mower should have been equipped with a rollover protective safety system ("ROPS") which would have prevented Ms. Sobolik's death, and that defendants should have warned Ms. Sobolik to purchase a ROPS as an option.  At the time Ms. Sobolik purchased the tractor, however, a ROPS was not offered by defendants as an option on the particular mower Ms. Sobolik purchased.  (Mem. in Opp'n to Mot. to Allow Pl. to Install ROPS at 3–4, Docket No. 46.)

**DISCUSSION**

## I.     STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    DESIGN DEFECT CLAIMS

While Sobolik has separately pled negligence and strict liability, the Minnesota Supreme Court[1] has concluded that these two claims are essentially based on the same theory, and differ primarily in their focus of inquiry.  *Johnson v. John Deere Co.*, 935 F.2d 151, 155 (8th Cir. 1991).  "The distinction between strict liability and negligence in design-defect and failure-to-warn cases is that in strict liability, knowledge of the condition of the product and the risks involved in that condition will be imputed to the manufacturer, whereas in negligence these elements must be proven."  *Bilotta v. Kelley*

---

[1] This Court has diversity jurisdiction over this case and the controlling law is that of the forum state, Minnesota.  28 U.S.C. § 1332; *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003).

*Co., Inc.*, 346 N.W.2d 616, 622 (Minn. 1984).  As a result, "to ensure the broadest theory of recovery, a trial court could properly submit a design-defect or failure-to-warn case to a jury on a single theory of products liability." *Id.* at 623.  Accordingly, the Court will analyze Sobolik's design defect claims and his failure to warn claims under a single theory.

### A.    Elements of Design Defect Claim

Here, Sobolik must establish three elements for a prima facie case of product liability.   "[First] the defendant[s'] product must have been in a defective condition, unreasonably dangerous for its intended use; [second] the defect must have existed when the product left defendant[s'] control; and [third] the defect must have been the proximate cause of the injury." *Guyer v. Valmet, Inc.*, No. 01-2310, 2003 WL 22076608, at *3 (D. Minn. Sept. 2, 2003) (citing *Bilotta*, 346 N.W.2d at 623).  The only issue in dispute is whether the ZTR mower was "in a defective condition, unreasonably dangerous for its intended use" because it lacked a ROPS.

By law, a product is in a defective condition, unreasonably dangerous for its intended use if the manufacturer:

> [fails] to exercise that degree of care in [the] plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, as well as an unintended yet reasonably foreseeable use.

> What constitutes "reasonable care" will, of course, vary with the surrounding circumstances and will involve a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm.

*Bilotta,* 346 N.W.2d at 621 (quotation marks omitted).

Minnesota courts consider the following factors when evaluating the balance of harms to assess "reasonable care":

> (1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

*Guyer*, 2003 WL 22076608, at *3 (citing *Holm v. Sponco Mfg.,* 324 N.W.2d 207, 212 (Minn. 1982)).

Here, defendants argue that the design of the ZTR without a ROPS was reasonable, as a matter of law, since it complied with industry standards, they had notice of only one fatal accident with the ZTR prior to Ms. Sobolik's accident which occurred under very different circumstances,[2] and it was the result of a deliberate and legitimate balancing of the utility of the machine with and without a ROPS.

### 1.      Industry Standards

A manufacturer's compliance with industry standards is evidence of reasonable design, but it "is not conclusive proof on the question of whether a manufacturer exercised reasonable care." *Zimprich v. Stratford Homes, Inc.*, 453 N.W.2d 557, 560

---

[2] Defendants were notified of a fatal accident involving Henry "Rick" Linenbrink on May 21, 2005 in Cassville, Mo. Mr. Linenbrink was killed when the lawn tractor he was using went over a four foot retaining wall. (Defs.' Second Supp. Answers to Pl.'s 11/16/09 Interrogs., Ex. 21 at 5–6, Docket No. 165.)

(Minn. Ct. App. 1990) (citing *Schmidt v. Beninga*, 173 N.W.2d 401, 408 (Minn. 1970));

*see also Buchanna v. Diehl Mach., Inc.*, 98 F.3d 366, 371 (8th Cir. 1996) ("[Defendant's]

evidence, **including compliance with applicable industry standards** in place at the

time of manufacture and evidence . . . merely shows that the jury had competing evidence

from which to choose." (emphasis added)) (applying Arkansas law in evaluating a saw

design). In part, Minnesota courts do not consider such evidence conclusive since a "jury

[might] conclude that the industry custom itself may be negligent." *Ramstad v. Lear

Siegler Diversified Holdings Corp.*, 836 F. Supp. 1511, 1519 (D. Minn. 1993) (evaluating

jury instructions related to a grain auger's design); *see also State Farm Fire and Cas. Co.

v. Burns*, No. C9-94-735, 1994 WL 638112, at *5 (Minn. Ct. App. Nov. 15, 1994)

("Testimony established that the two-inch clearance between the chimney pipe and

combustibles complied with industry standards . . . . The jury could have reasoned that,

**although the chimney complied with industry standards**, a reasonable design should

have provided greater clearance." (emphasis added)). Indeed, Sobolik presents evidence

of other industry standards, the "design safety hierarchy," with which defendants may not

have complied. (Berry Aff., Ex. 2 at 2–3, Docket No. 156.)

Therefore, the Court determines a dispute of material fact exists as to whether

defendants complied with industry standards and customs relative to the design of the

ZTR. Further, even if defendants were in compliance with industry standards, such

evidence is not conclusive at the summary judgment stage of litigation. *Burns*, 1994 WL

638112, at *5.

### 2.      Notice of other accidents

The Magistrate Judge in this case ruled that to be discoverable on the issue of notice, previous incidents of rollover accidents had to be of "substantially similar machines." *See First Sec. Bank v. Union Pac. R.R. Co.*, 152 F.3d 877, 879 (8th Cir. 1998).  The Magistrate Judge held that "substantially similar machines" were those in a weight class of less than 850 pounds.  (Order at 12–13, Docket No. 90.)  The Court reiterated this classification when it affirmed the Magistrate Judge's Order denying the motion to amend the complaint to assert a claim for punitive damages.  (Order at 3–4, Docket No. 206.)  As a result of this weight class designation, Sobolik presents evidence of only one fatal rollover accident involving defendants' mowers in the same weight class.[3]  The Court found this single accident insufficient to constitute evidence of notice of a high probability of injury to others for the purposes of a punitive damages claim. (*Id.* at 5); Minn. Stat. § 549.20.  Defendants now assert that evidence of one accident should also prove deficient for the underlying design defect claim to survive summary judgment.

However, a punitive damages claim requires a higher standard of proof than that for the principal claim.  Minn. Stat. § 549.20 (evincing a clear and convincing standard of proof for punitive damage claims); *see, e.g.*, *Ryther v. KARE 11*, 864 F. Supp. 1525, 1529 (D. Minn. 1994) ("Punitive damages are allowed where it is established by clear and

---

[3] Sobolik presents a spreadsheet in his response to the motion for summary judgment listing other incidents.  (Berry Aff., Ex. 6, Docket No. 156.)  Given potential admissibility issues with those incidents but without ruling on same, the Court does not include these incidents in its analysis.

convincing evidence that the defendant acted with deliberate disregard for the rights of the plaintiff.  The court finds that the evidence concerning defendants' conduct does not meet the **higher standard of proof**." (emphasis added) (internal citations omitted)). In comparison, the underlying claim requires only a "preponderance of the evidence." *See, e.g.*, *Waite v. Am. Creosote Works, Inc.*, 204 N.W.2d 410, 412 (1973).

Furthermore, a paucity of reports of similar rollover accidents from consumers does not mean there is **no** evidence that defendants knew of the possibility and appreciated the danger of rollovers.   As another court addressing design defect knowledge issues noted:

> The absence of similar accidents, however, is not conclusive proof that the . . . design was not defective.  A low likelihood of danger, as evidenced by a very low rate of accidents, is only one factor in determining the safety of a product's design. The "gravity of the danger" is also relevant, among other factors.

*Feliciano v. Toyota Indus. Equip. Mfg., Inc.*, No. A110538, 2007 WL 2020056, at *12 (Cal. Ct. App. July 13, 2007) (internal quotation marks and citations omitted).  In fact, courts often allow design defect cases with absolutely no prior accident history to proceed since the relevant inquiry is the **knowledge** of the manufacturer, not the reported accident history.  *Cf. Stanley v. Aeroquip Corp.*, Nos. 97-6472, 97-6475, 98-5005, 1999 WL 266250, at *4 (6th Cir. Apr. 22, 1999) (affirming the judgment of a jury in a design defect case with no prior accident history).   This focus of inquiry is logical since otherwise manufacturers would be granted a "free pass" under state tort law to produce dangerous products until someone was injured and then reported the injury.

Here, in addition to the one reported accident – albeit under different circumstances – Sobolik presents evidence that rollovers had occurred in defendants' own testing of the product.  (Pl.'s Ex. Index, Ex. A at 36–37 (noting a rollover incident by a test technician), Ex. B. at 13–16, Ex. C at 28–29, Ex. D at 159–60, Docket No. 158.)  Further, Sobolik presents ample evidence as to defendants' knowledge of the **gravity** of potential injury to the operator in a rollover accident.  (Berry Aff., Ex. 2 at 3–8, Docket No. 156); *Solo v. Trus Joist MacMillan*, No. 02-2955, 2004 WL 524898, at *8 (D. Minn. Mar. 15, 2004) ("For a condition to be 'known,' it must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." (quoting *Louis v. Louis,* 636 N.W.2d 314, 321 (Minn. 2001)).  The reports Sobolik presents may include some data of tractors that are not in the weight class determined by the Magistrate Judge for the purposes of discovery.  However, notice of incidences of previous rollover accidents and knowledge of the gravity of potential harm from such accidents are two separate factors in assessing the reasonableness of a design choice.  *Feliciano*, 2007 WL 2020056 at *12.  Therefore the use of these studies to show knowledge of the gravity of harm is consistent with the discovery order.  This use of the evidence comports generally with the Rules of Evidence and the admissibility of evidence for some purposes but not others.  *See* Fed. R. Evid. 404(b) (allowing the admittance of evidence for limited purposes even if such evidence would be inadmissible for other purposes); *see also United States v. Zimmerman*, 943 F.2d 1204, 1212 (10th Cir. 1991) (noting that if one of the exceptions listed in 404(b),

such as knowledge, is at issue in a case evidence to prove or disprove that issue is admissible).

As a result, the Court finds that Sobolik has presented sufficient evidence of previous accidents and the gravity of potential outcomes as to present a dispute of material fact about the knowledge held by defendants in their choice of design.

### 3.      Balancing of utility and safety

Defendants argue that the choice not to install a ROPS on the ZTR was the result of a balance of the utility and cost of the machine.  Essentially, defendants argue that consumers would not have desired to pay for the increased cost of the machine with a ROPS installed and therefore, given the competition in the marketplace, defendants acted reasonably in not adding a ROPS.

Minnesota courts have long recognized the principle that "[t]here is little evidence . . . that the competition of the marketplace will motivate manufacturers to make their products better and safer." *Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207, 213 (Minn. 1982).  Whether the risk-utility balance struck by the manufacturer was or was not reasonable is a question best suited for resolution by a factfinder.  *See Bilotta*, 346 N.W.2d at 622.  Only where the plaintiff has produced no evidence "upon which to evaluate the likelihood of harm, the expected gravity of harm, . . . what precautions could have avoided the harm[, or of] alternative designs" is summary judgment appropriate. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998); *see also Solo,* 2004 WL 524898, at *11 (granting summary judgment to defendant where "absent from

[plaintiff's] response to [the] summary judgment motion is any evidence that 'balanc[es] . . . the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm.'" (citing *Bilotta*, 346 N.W.2d at 621)).

In the instant case, Sobolik presents evidence of different industry standards, evidence that defendants knew the ZTR could roll over and that such rollovers could be fatal, and evidence of a feasible alternative design (incorporation of a ROPS). As a result, the Court finds that Sobolik "has presented enough evidence regarding the 'reasonable care balancing test' to survive summary judgment." *Guyer*, 2003 WL 22076608, at *4.

### B.      Crashworthiness

In addition to other claims, Sobolik asserts that defendants are liable for their failure to make the ZTR crashworthy. Defendants argue that the doctrine of crashworthiness is not applicable since they allege the ZTR has no underlying defect.

In manufacturing products where crashes are likely, such as automobiles, the manufacturer has a "duty of non-negligent design given the foreseeability of the risk of injury **in the event** of collision, rather than the foreseeability of the collision itself (nearly a given in today's society)." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 384 (8th Cir 1992) (emphasis added); *see also Larsen v. General Motors Corp.*, 391 F.2d 495, 502 (8th Cir. 1968) ("Collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable."). In such circumstances, "the manufacturer

should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." *Id.* at 503.

Courts, including the Eighth Circuit, consistently apply the crashworthiness doctrine to tractors and riding mowers. *Wagner v. Int'l Harvester Co.*, 611 F.2d 224, 230-31 (8th Cir. 1979) (applying Minnesota law and affirming that "[w]here a product cannot be used as intended without a known risk of accidents, the manufacturer must design that product with reasonable care so as to minimize the damage or injury arising in the event of accident"); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 312 (7th Cir. 2010) (applying Illinois law); *Tafoya v. Sears Roebuck & Co.*, 884 F.2d 1330, 1338–39 (10th Cir. 1989) (applying Colorado law); *Baker v. Outboard Marine Corp.*, 595 F.2d 176, 177 n.1 (3d Cir. 1979) (applying Pennsylvania law); *Young v. Deere & Co., Inc.*, 818 F. Supp. 1420, 1422 (D. Kan. 1992) (applying Kansas law). Like the Seventh Circuit, the Court "see[s] no principled basis to conclude that [Minnesota] courts would require car manufacturers to foresee that accidents occur with automobiles, while allowing manufacturers of riding mowers to pretend that accidents involving riding mowers are uncommon. Accidents on riding mowers are foreseeable just as accidents on our roadways are." *Malen*, 628 F.3d at 312. As a result, the lack of a ROPS, while not an accident-causing defect, is potentially an injuring-enhancing defect. As the crashworthiness of the ZTR presents a dispute of material fact, defendants are not entitled to summary judgment.

## III.    FAILURE TO WARN CLAIMS

The parties are in dispute as to the exact nature of Sobolik's failure to warn claims. The complaint alleges that defendants are liable for their "failure to adequately warn of the need to install a [ROPS]." (Compl. ¶ 23, Docket No. 1.)  Defendants characterize the claim as one alleging failure to warn of the danger of operating the tractor near a drop-off.  In his response to the summary judgment motion, Sobolik rearticulates that the failure to warn claim is that defendants failed to warn of the need to install a ROPS. (Pl.'s Mem. In Opp'n, Docket No. 155.)

However, as established by the record, when Ms. Sobolik purchased the ZTR mower, a ROPS was not an available option.  (Mem. in Opp'n to Mot. to Allow Pl. to Install ROPS at 3–4, Docket No. 46.)  Courts have assigned a duty to inform a consumer of options on multi-use equipment where such options are available.  *Wagner*, 611 F.2d at 231 ("[T]he purchaser of multi-use equipment knows best the dangers associated with its particular use, and so it should determine the degree of safety provided.  That is to say, the purchaser may be in the best position to make the cost-benefit analysis implicit in the principles of general negligence." (citing *Biss v. Tenneco, Inc.*, 64 A.D.2d 204 (1978)). By this rule, if the seller never advises the purchaser of the available options, it retains liability.

The Minnesota Supreme Court has adopted the holding of *Biss* only as it applies to multi-use equipment.  *Bilotta*, 346 N.W.2d at 624 ("The rule cited in *Wagner* and adopted by the court in *Biss* . . . , can be justified only where multi-use equipment is involved and

the optional device would impair the equipment's utility in the uses for which the device is unnecessary."). Sobolik does not argue that the ZTR at issue is multi-use equipment, making the *Biss* rule unavailing.

Additionally, when such options are not available, there can be no duty. *Wagner*, 611 F.2d at 231 ("While we accept [the *Biss*] theory as basically sound, the facts of this case do not support its application here. [At the time of purchase, defendant] did not offer a rollover protective structure . . . ."). In this case however, defendants offered a ROPS, just not for the ZTR tractor at issue. The Court is not aware of a case that supports the proposition that a manufacturer is relieved of a duty to warn of a danger by simply making a safety option unavailable on a particular model. As a result, the issue to be determined is whether the warnings given were adequate. The dispute as to whether defendants should have warned of the need for a ROPS is one properly answered by a jury. As a result, the Court denies summary judgment on this claim.

## IV.    ASSUMPTION OF RISK

Defendants move for summary judgment on the affirmative defenses of primary and secondary assumption of risk. Under Minnesota law, to establish assumption of risk, defendants must show that Ms. Sobolik (1) had knowledge of the risk; (2) had an appreciation of the risk; and (3) had a choice to avoid the risk but voluntarily chose to chance the risk. *Walk v. Starkey Mach., Inc.*, 180 F.3d 937, 939 (8th Cir. 1999) (citing *Andren v. White-Rodgers Co.*, 465 N.W.2d 102, 104-05 (Minn. Ct. App. 1991)).

###### A.    Primary Assumption of Risk

Under Minnesota law, the doctrine of primary assumption of risk may operate to completely relieve a defendant of liability in a products liability action.   *Andren*, 465 N.W.2d at 105.   However, "[a]pplication of the primary assumption of risk doctrine is uncommon."   *Rusciano v. State Farm Mut. Auto. Ins. Co.*, 445 N.W.2d 271, 273 (Minn. Ct. App. 1989).   Primary assumption of risk can only apply when the plaintiff **expressly or implicitly manifests consent** to relieve the defendant of that duty.   *Schneider ex rel. Schneider v. Erickson*, 654 N.W.2d 144, 149 (Minn. Ct. App. 2002) (citing *Armstrong v. Mailand*, 284 N.W.2d 343, 351 (Minn. 1979)).   "[N]ot every deliberate encountering of a known danger  . . . is reasonably to be interpreted as evidence of such consent."   *Iepson v. Noren,* 308 N.W.2d 812, 815 (Minn. 1981) (quoting Prosser, Handbook of the Law of Torts § 68 (4th ed. 1971) (stating that even a jaywalker who dashes in front of speeding cars "does not manifest consent that they shall use no care and run him down.   On the contrary, he is insisting that they shall take immediate precautions for his safety.")).   "Primary assumption of risk is implied mainly in the context of sporting events and other naturally risky activities."   *T.H.S. Northstar Assoc. v. W.R. Grace and Co.*, 66 F.3d 173, 176 (8th Cir. 1995).

Here, defendants assert that since Ms. Sobolik drove near the coulee, she assumed the risk of the inherent danger of such activity.   However, defendants proffer no other evidence that Ms. Sobolik "intended to relieve the defendant[s] of any duty to protect against a risk that was inherent, obvious, and unavoidable."   *Id.*   Essentially, defendants argue that by simply having an accident near the coulee, Ms. Sobolik assumed the risk of

having such an accident.  This reasoning is circular and does not demonstrate the level of proof necessary to "manifest consent" for such an uncommon defense.  The Court finds summary judgment is not warranted on this evidence.

### B.      Secondary Assumption of Risk

Secondary assumption of risk "is a type of contributory negligence where the plaintiff voluntarily encounters a known and appreciated hazard created by the defendant without relieving the defendant of his duty of care with respect to such hazard." *Andren*, 465 N.W.2d at 104 (citing *Armstrong*, 284 N.W.2d at 349).  "Assumption of the risk differs from contributory negligence, which is based on carelessness, 'by being an exercise of intelligent choice.'" *Walk*, 180 F.3d at 941 (8th Cir. 1999) (Lay, J., dissenting) (quoting *Beckman v. V.J.M. Enters.,* 269 N.W.2d 37, 39 (Minn. 1978) (citation omitted)).

Here, defendants assert that the dangers of mowing near a drop-off were obvious. Further, as evidence that Ms. Sobolik appreciated this danger, defendants offer the testimony of Ms. Sobolik's fifteen-year-old daughter that whenever she was to mow the lawn, Ms. Sobolik would mow near the coulee.  (Aff. of Donald H. Carlson, Aug. 2, 2010, Ex. R at 18, Docket No. 143.)  Finally, they offer the fact that Ms. Sobolik had a fatal accident as evidence that she could have avoided the risk but chose not to.

The Court finds that the testimony of Ms. Sobolik's daughter is not conclusive at the summary judgment stage to determine assumption of risk.  She simply states that "my mom always did the first round, or first couple rounds, which is around the river."  (*Id.*) A jury could interpret Ms. Sobolik's choice to do the "first couple rounds" as something

other than an appreciation of the danger of mowing by the coulee.  As a result, the Court finds that the question is properly one for a jury to determine since "[s]econdary assumption of risk is a form of contributory negligence that bars recovery only to the extent **the jury** finds comparative fault in the plaintiff's assumption of the risk."  *Walk*, 180 F.3d at 940 n.5 (Lay, J., dissenting) (emphasis in original) (citing *T.H.S. Northstar*, 66 F.3d at 176).

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [Docket No. 140] is **DENIED.**

DATED:  March 30, 2011
at Minneapolis, Minnesota.

s/ *John H. Tunheim*

JOHN R. TUNHEIM
United States District Judge